IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Stephen H., | ) |
| Plaintiff, | ) ) ) ) Case No.: 24 cv 50004 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Frank Bisignano Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Stephen H., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On April 28, 2017, Stephen H. ("Plaintiff") filed a second Title II application for disability and disability insurance benefits. Plaintiff also filed a Title XVI application for supplemental security income at that time. R. 107. In both applications, Plaintiff alleged a disability beginning on June 1, 2014. *Id*. The Social Security Administration denied his application initially and upon reconsideration. *Id*. Following a written request for a hearing, a hearing was held on December 21, 2018. Administrative Law Judge ("ALJ") Robert C. Asbille issued an unfavorable decision on February 27, 2019. R. 107-20. Plaintiff appealed that decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-3. On June 10, 2021, The United States District Court remanded the matter by agreement. *See* 20 C 50075, [30]. On July 8, 2021, the Appeals Council remanded the case for a new hearing. R. 1349-50.

A hearing was held before ALJ Jessica Inouye on November 8, 2021, R. 1289-1340, and continued on February 23, 2022, R. 1250-88. A supplemental hearing was held on January 12, 2023. R. 2191-2201. Plaintiff was represented by counsel at the hearings and testified on his own behalf. Allen W. Heinemann, Ph.D., an impartial medical expert testified, as well as Monika Dabrowiecka, an impartial vocational expert ("VE").[1]

---

[1] The February 23, 2022, hearing transcript refers to the vocational expert as "Deborah Weeka" throughout R. 1250-88. The Court accepts the ALJ's decision referring to her as "Monika Dabrowiecka." R. 1202-1235.

On February 1, 2023, the ALJ issued her written opinion denying Plaintiff's claim. R. 1202-35. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1191-95. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [34]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [14], the Commissioner's response brief [18], and Plaintiff's reply [23].

**B. The ALJ's Decision**

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from January 2018 through March 2018. R. 1205-08. The ALJ further found that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity; therefore, the ALJ's decision addressed the period of time Plaintiff did not engage in substantial gainful activity. R. 1208. At step two, the ALJ found that Plaintiff had the following severe impairments: right shoulder impingement; degenerative disc disease of the lumbar spine status post surgeries; history of learning disorder; and borderline intellectual functioning. R. 1208-09. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 1209-12.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except no climbing of ladders, ropes, or scaffolds but occasional climbing of ramps and stairs, as well as occasional balancing, stooping, kneeling, crouching, and crawling. The Plaintiff can reach overhead occasionally, and frequently in all other directions. Plaintiff can engage in unskilled work activities and can learn, understand, and remember simple work duties requiring no more than a fifth-grade level of math, reading, and writing required, as well as only occasional performance of math, reading, and writing. The Plaintiff can occasionally work with coworkers and the general public. He can tolerate typical supervisory interactions common to unskilled work, meaning that at the introductory level, the supervisor or designee can demonstrate or train the work, but after the introductory period, it would be occasional work-related interaction thereafter. The ALJ found that Plaintiff should work at a moderate type of pace or have end-of-day goals, with no fast-paced production requirements with hourly job quotas. Plaintiff can make simple work-related decisions, and the work environment should be routine with no more than occasional changes. Plaintiff's introductory period should be primarily through oral instruction or demonstration that allows questions or follow-up during the introductory period. With these limitations, Plaintiff could carry out the necessary attention and concentration to complete the unskilled work duties in two-hour increments throughout the typical workday assuming typical breaks. R. 1212-33. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 1233. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 1233-1234. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 1, 2014, through the date of decision, February 1, 2023. R. 1234-35.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff presents multiple arguments before the Court. First, Plaintiff argues the ALJ failed to build a "logical bridge" between the record and her conclusions and failed to properly develop the record. Second, Plaintiff argues the ALJ failed to properly consider medical opinions. Third, Plaintiff asserts that the VE testified to incomplete hypotheticals at the hearing. The Court finds that the ALJ supported her conclusions with substantial evidence, adequately evaluated the medical opinions, and committed no error at the hearing. Accordingly, the Court affirms the Commissioner's decision.

### **"Logical Bridge" and Developed Record**

First, Plaintiff makes a brief argument that the ALJ made confusing and incomplete

conclusions, failed to properly cite to and develop the record, and failed to explain how she reached her decisions. In his brief, Plaintiff provides one example in support of this argument – that the ALJ's failure to ask questions of the medical expert during the expert's testimony amounted to a failure to develop the record.

"The ALJ…has a basic obligation to develop a full and fair record, and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted). And while the ALJ is not required to mention every piece of evidence, her analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). *See also Warnell*, 97 F.4th at 1053. Here, the psychological medical expert, Dr. Allen Heinemann, testified at both the November 2021 hearing and the February 2022 hearing. At both hearings, the ALJ asked multiple questions and follow-up questions – over 20 pages of the hearing transcripts are dedicated to the ALJ questioning of the expert. Among other things, the questioning included Dr. Heinenmann's opinion on Plaintiff's qualification for a listing, as well as details supporting an RFC. While the ALJ is under an obligation to develop a full and fair record, it is well-settled that a claimant has the "principal duty" to submit medical evidence and the ALJ then supplements the record as needed. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023). Further, a claimant "will not succeed on a duty-to-develop claim by arguing merely that the ALJ should have uncovered missing evidence or sought out all possible disabilities…[n]either will the claimant succeed by arguing the ALJ could have gathered more evidence, unless the ALJ did not meet the regulatory requirement. And once the ALJ reasonably decides that 'further development' of a key issue is not necessary, the ALJ's decision to go no further is not a breach of duty." *Id*. at 1245-46. Additionally, where "the claimant is represented by an attorney, the ALJ's duty to develop the record is not as great as when a claimant proceeds *pro se*." *Hally H. v. Bisignano*, No. 22 CV 7215, 2025 WL 2306822, at *2 (N.D. Ill. Aug. 11, 2025) (citation omitted). Plaintiff's undeveloped argument that the ALJ erred by failing to build a logical bridge between the evidence and the result due to not asking the medical expert questions at the hearings, is unsupported. Plaintiff fails to note any regulation the ALJ did not meet, nor does Plaintiff point out any evidence the ALJ overlooked or misinterpreted. In addition to conducting two thorough hearings, the ALJ provided a great amount of detail in her decision to support her conclusions regarding the psychological medical expert's opinions. Accordingly, the Court finds no error.

### **Medical Opinions**

Next, Plaintiff makes multiple arguments concerning the ALJ's treatment of the various medical expert's findings and conclusions. To begin, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how they considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20CV02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence

and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell*, 72 F.4th at 816 (internal quotation marks and citation omitted).

*State Agency Physicians*

First, Plaintiff argues that the ALJ improperly relied on the opinions of the state agency physicians, Melanie Nicholas, Ph.D. and Donna Hudspeth, Psy.D., during the initial review and reconsideration phases rather than on more recent opinions, and further argues that the ALJ erred by ignoring the limitation to 1-2 step tasks suggested by the consultants. Plaintiff describes the ALJ's reliance on the state agency medical consultants' opinions rendered in August 2017 and September 2017 as "very remote in nature," [14], p. 8, and notes that additional information that added additional impairments was overlooked. In her decision, the ALJ found the opinions of Dr. Nicholas and Dr. Hudspeth generally persuasive. These consultants found no more than moderate limitations in any area of functioning and indicated that Plaintiff had the ability to complete simple 1-2 step tasks. R. 1228. However, the ALJ found that the greater record supported further limitations on Plaintiff's range of unskilled work. *Id*. Additionally, the ALJ noted that "[r]ecords submitted after these opinions remain generally consistent with these opinions, including the vocational records." *Id*. The ALJ further noted that the term "1-2 step tasks" is "not vocationally relevant" nor explained by the consultants. The ALJ stated: "It is understood in this situation that '1-2 step tasks' refers to simple work instructions as part of the definition of unskilled work." *Id*. The decision goes further to explain that, based on the state agency physicians' records, Plaintiff's ability to "carry out very short and simple instructions is noted to be 'not significantly limited' combined with the same finding for the ability [to] remember locations and work-like procedures indicating the cognitive limitations were for detailed or greater work instructions." R. 1228.

Plaintiff has provided no legal authority for the argument that the ALJ erred by accepting the opinions of the state agency physicians during the initial review and reconsideration phases, and not a more recent opinion. An ALJ need not adopt one opinion or choose between opinions. *Schmidt*, 496 F.3d at 845. Additionally, here the ALJ found the opinions generally persuasive (indicating that Plaintiff had the ability to complete simple tasks but would not be capable of more difficult tasks), but also found that the records supported more limitations, such as limiting instruction to oral or through demonstration, limiting math, reading, and writing to a fifth grade level, and restrictions on pace, changes, and social interaction. R. 1228. As to Plaintiff's argument that the ALJ failed to adopt a restriction to 1-2 step work tasks, the ALJ provided specific reasoning as to why she did not use the term "1-2 step tasks." As noted above, the ALJ decision states that the agency use of the term "1-2 step tasks" is "shorthand for unskilled word as it is a vague term and is not consistent with any SSA regulation or policy." *Id*. The ALJ goes further to provide examples in the record that exemplify Plaintiff's ability to carry out short, simple instructions. The decision also cites to various SSA rules and regulations that define and explain "unskilled work." *Id*. Plaintiff provides no examples of where or how the ALJ failed to incorporate the appropriate restrictions on Plaintiff's ability to perform work tasks. "Nowhere does [Plaintiff] identify what

5

evidence the ALJ overlooked or discounted…It is not enough to nitpick the ALJ's order. To warrant reversal, [Plaintiff] must show that the ALJ's determination was not supported by substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Plaintiff fails to present an argument that he was limited to 1-2 step tasks, nor does he explain how the ALJ's findings fail to account for his limitations. The Court finds the ALJ's conclusion that the state agency psychological consultants' opinions were generally persuasive supported by substantial evidence.

*Medical Experts*

Second, Plaintiff argues the ALJ improperly discounted the expert opinions of Drs. Heinemann, Thomas, and Reckamp. To determine the persuasiveness of a medical opinion, the most important factor the ALJ is to consider are supportability and consistency. 20 C.F.R. § 416.920c(a). As noted above, "[t]o assess supportability, an ALJ looks at the extent the relevant and objective medical evidence supports the medical opinion. § 416.920(c)(1). To gauge consistency, the ALJ considers the extent to which the medical opinion is consistent with other medical evidence in the record. § 416.920(c)(2). "Similarly, the more consistent the opinion is, the more persuasive it is." *Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025).

Dr. Heinemann testified that it was unlikely that Plaintiff could maintain "substantial gainful activity" ("SGA") level employment due to the fact that he never lived alone, was not capable of managing his finances, and had not maintained consistent work. Dedicating nearly six pages of her decision to analyzing Dr. Heinemann's opinions, the ALJ concluded that Dr. Heinemann's opinions were "generally not persuasive as the opinions were largely conclusory and the explanation/support relied much on broad inferences that are not consistent with the overall record." R. 1227. Plaintiff argues the ALJ made two errors: 1) the ALJ incorrectly found that Plaintiff had maintained SGA employment in 2017 and 2018; and 2) the ALJ had ample opportunity to clarify any conclusions she found to be conclusory. As to the argument that Plaintiff did not maintain SGA employment, Plaintiff fails to provide a substantive argument in support of this position. He contends that he performed work in a sheltered position, he worked for family and friends, and worked with the assistance of state agencies. Plaintiff uses these examples to support his position that he did not engage in SGA. However, the record provides little support for these examples. First, the record does not support that Plaintiff ever worked in a sheltered position. Second, Plaintiff testified that his aunt knew the owners of the Dairy Queen where he received a part-time job. Having a family member introduce Plaintiff to a potential employer does not make this employment ungainful, nor does it rise to the level of substantial assistance. Third, while Plaintiff testified that he worked as a grocery bagger through a high school program and had another job where he showed disabled people how to assemble hair clippers, R. 1323-27, the Court does not find a sufficient basis to conclude that these two employment opportunities rise to the level of substantial assistance of state agencies. The ALJ's decision includes a very thorough review of Plaintiff's work history and erred in Plaintiff's favor. R. 1205-08. The decision details all of Plaintiff's work history, including dates, locations, responsibilities, hours, and wages. For example, while the record supports that Plaintiff engaged in consistent work, the ALJ only found SGA for the months in the first quarter of 2018. R. 1207-08. Accordingly, the ALJ's determination that Dr. Heinemann's conclusions regarding Plaintiff's work history were unsupported was based on substantial evidence.

Next, Plaintiff argues (again) that the ALJ had the opportunity, but failed to clarify any conclusions of Dr. Heinemann that she found conclusory. As noted above, the ALJ questioned Dr. Heinemann extensively at both hearings. Plaintiff appears to be arguing that the ALJ did not adequately develop the record as to Dr. Heinemann's testimony. This argument is without merit. *See Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) ("Because there was enough evidence before the ALJ to support his conclusions, the ALJ did not err by failing to develop the record further."). Regarding Dr. Thomas, Plaintiff argues he supported Dr. Heinemann's opinions by opining that Plaintiff would be unable to manage his funds, had borderline intellectual functioning, and would be unable to manage a job that did not have a supportive component. As with Dr. Heinemann's opinions, the ALJ adequately determined that Dr. Thomas's opinions were vague, not sufficiently supported, and not consistent with the record as a whole. She found that the medical experts failed to support their opinions with explanations of Plaintiff's medical history and, instead, largely drew conclusions based on Plaintiff's work history and the fact that he lives with his family. R. 1229. Additionally, the ALJ noted that the medical opinions emphasized that Plaintiff's intellectual deficits would likely impede his ability to problem solve and work independently, but the opinions fail to inform the most Plaintiff could do and, instead, support the reality that Plaintiff has limitations. As the ALJ made clear in her decision, these limitations are accounted for in Plaintiff's RFC. *Id*. In determining the supportability and consistency of medical opinions, the ALJ is subject "to only the most minimal of articulation requirements…[and] need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053.

*Treating Physician*

As to Dr. Reckamp, Plaintiff's treating physician, Plaintiff merely argues "[t]he ALJ did not properly analyze Dr. Reckamp's opinions." [14], p. 11. Plaintiff provides no additional argument, cites to no record, nor supplies the Court with any supportive case law to advance his position. This unsupported argument that the ALJ did not properly analyze Dr. Reckamp's opinions is waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Waiver aside, the Court finds that the ALJ's analysis of Dr. Reckamp's opinions is thorough and supported by substantial evidence.

*Hearing Testimony*

Finally, Plaintiff argues that the ALJ failed to properly address Plaintiff's arguments from the final hearing on January 12, 2023. However, Plaintiff does not state what information from the hearing Plaintiff believes should have been addressed or that Plaintiff believes was inconsistent with the ALJ's conclusions. The ALJ set this hearing to further explore Plaintiff's work history. However, this hearing followed Plaintiff's counsel's supplemental letter arguing that since Dr. Heinemann testified (at the February 23, 2022, hearing) that Plaintiff met or equaled listing 12.11, no supplemental hearing was needed. Here Plaintiff argues that the ALJ's decision fails to mention the January 12, 2023, hearing, and also that the ALJ did not ask Dr. Heinemann any questions at the supplemental hearing. Plaintiff argues this is error as the ALJ failed to adequately develop the record. Plaintiff's argument is confusing. The ALJ detailed Plaintiff's testimony (taken in November 2021, February 2022, and January 2023) in her decision. R. 1213-14. The Court notes

that the ALJ specifically addressed Plaintiff's testimony from the January 12, 2023, hearing (R. 1214) despite Plaintiff's argument to the contrary. Additionally, Dr. Heinemann did not testify at the supplemental (January 2023) hearing and, therefore, the ALJ did not ask him any questions. To the extent that Plaintiff is arguing the ALJ should have called Dr. Heinemann as a witness in the January 2023 hearing, the Court disagrees. Dr. Heinemann was questioned extensively at the first two hearings by the ALJ and Plaintiff's counsel, and Plaintiff has provided the Court with no missing evidence from the record regarding Dr. Heinemann's opinions.

As to Plaintiff's argument that the ALJ should have awarded benefits based on Dr. Heinemann's testimony at the second (February 2022) hearing, the Court disagrees. At the first hearing, on November 8, 2021, Dr. Heinemann testified that Plaintiff did not meet or equal listing 12.11 – neurodevelopmental disorders. R. 1300. On February 23, 2022, Dr. Heinemann testified that Plaintiff did meet listing 12.11 ("…in terms of the B criteria, I think there are two marked areas of limitation, concentration, persistence, pace and adapting or managing oneself. So, yes, I believe he meet[s] listing 12.11."). As pointed out by the Commissioner in his response brief, Dr. Heinemann relied on the same record evidence in support of his November 2021 opinion and February 2022 opinion. [18], p. 7-8. This evidence included Plaintiff's examinations and evaluations, his vocational rehabilitation services, and lifestyle, including Plaintiff's residence with his family, and his support and assistance from family and friends. R. 1300-02; 1257-58; 1263-65. As noted above, the ALJ thoroughly reviewed Dr. Heinemann's opinions and found them to be largely conclusory. For example, the ALJ found that the expert's opinions were not supported by the medical record, were based on Plaintiff's reporting, and drew assumptions about what level of employment Plaintiff was capable of that were not supported in the record. R. 1229. The decision also noted that the experts set out Plaintiff's deficits but failed to inform the most Plaintiff could do. Additionally, the ALJ's decision noted that the expert's conclusions were not consistent with the overall record, nor with Plaintiff's activities of daily living and overall level of mental functioning, as reflected in Plaintiff's testimony. *Id*. It appears to the Court that Plaintiff is asking the Court to apply a standard of review of the ALJ's decision that is not applicable. It is well-settled that the Court's "threshold for evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Additionally, the Court will not reweigh the evidence as long as the ALJ's decision is supported by substantial evidence. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Here, the ALJ's review and analysis of Dr. Heinemann's expert opinions, including his testimony at two hearings, is more than sufficient. The Court finds the ALJ's conclusions based on substantial evidence.

### **Vocational Expert's Testimony**

Lastly, Plaintiff argues that the ALJ failed to pose complete hypotheticals to the VE at the hearing, disregarded her duty to remedy any conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and failed to adequately develop the record by questioning the VE regarding her testimony. Plaintiff notes that the VE testified only at the November 2021 hearing, and Dr. Heinemann provided testimony at the February 2022 hearing that the VE was not present to hear. Plaintiff argues Dr. Heinemann's February 2022 testimony could have been relevant to the VE's testimony. Plaintiff argues further that the VE testified under the incorrect assumption that Plaintiff has past relevant work (at Casey's General Store and Walmart). Therefore, the hypotheticals posed to the VE during her testimony were incomplete.

In her decision at step 5, the ALJ noted that the VE testified that given a hypothetical which included Plaintiff's age, education, work experience, and RFC, there were representative jobs in the national economy that Plaintiff could perform – cleaner, housekeeper; marker; and electrical accessories assembler. R. 1234. As included in the ALJ's decision, the VE testified that her testimony was consistent with the DOT, except with respect to one physical limitation. With regard to that limitation, the VE told the ALJ that her testimony was based on her experience. The ALJ accepted this testimony consistent with SSR 00-4p.[2] Plaintiff provides no substantive argument that the ALJ erred in accepting the VE's testimony based on her experience. As to Plaintiff's argument that the ALJ failed to pose complete hypotheticals to the VE at the hearing, the Court agrees with the Commissioner that this argument equates to the argument that the ALJ erred in crafting Plaintiff's RFC. "[A] challenge to the hypothetical [posed to the VE at the hearing] based on an alleged flawed RFC comes down to whether the ALJ erred in assessing [Plaintiff's] RFC." *Chestine G. v. Saul*, Case No. 18 C 4980, 2020 WL 1157384, at *14 (N.D. Ill. March 10, 2020) (citations and quotations omitted). *See also Wurst v. Colvin*, 520 Fed.Appx. 485, 489 (7th Cir. 2013) (holding that plaintiff's argument that the hypothetical posed to the VE failed to convey his limitations was based on the ALJ's RFC determination; therefore, plaintiff's objections "only repeats his challenge to the RFC."). Here, Plaintiff does not challenge the RFC, nor does he identify any limitations that are missing from the RFC. Plaintiff's argument that the hypothetical posed to the VE during the hearing was incomplete, is misplaced. Moreover, Plaintiff's argument that Dr. Heinemann's February 2022 testimony could have been relevant to the VE's testimony, is equally without merit. The Social Security Administration's Program Operations Manual System provides guidance on how the ALJ addresses VE testimony: "In addition to ensuring compliance with SSR 24-3p, the ALJ will…[d]irect the VE not to respond to questions on medical matters or draw conclusions outside of the VE's expertise on vocational issues. For example, the VE may not provide testimony regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law." HALLEX 1-2-6-74. Plaintiff does not challenge the ALJ's RFC; therefore, the Court finds no error in the vocational expert's testimony and concludes that the ALJ's decision is based on substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [18] is granted.

Date: February 12, 2026          ENTER:

_Margaret J. Schneider_
United States Magistrate Judge

---

[2] SSR 00-4p was rescinded on January 6, 2025, and replaced with SSR 24-3p. Under SSR 24-3p, adjudicators are no longer required to identify and resolve conflicts between testimony provided by VEs and information contained in the DOT.